IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CT-3070-D

GREGORY EARL BAKER,

        Plaintiff,

v.                          **ORDER**

UNITED STATES, et al.,

        Defendants.

Gregory Earl Baker ("Baker" or "plaintiff"), a former federal inmate, brings this action seeking relief pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 [D.E. 1, 3]. Baker contests the medical care that he received while incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"). He seeks relief for medical malpractice, negligence, and deliberate indifference to his medical needs in violation of the Eighth Amendment. Compl. [D.E. 3]. The complaint names as defendants the United States and individual defendants FCI-Butner Warden Stephens, FCI-Butner Associate Wardens Batts and Campos, FCI-Butner Medical Director Duchesne, FCI-Butner Physician Assistant Brian Burt, and FCI-Butner Doctor Serrano-Mercado. Compl. ¶¶ 2, 4–9. The United States Attorney represents all defendants.

On May 7, 2012, the court granted in part defendants' motion to dismiss, and dismissed plaintiff's seventh, tenth, and eleventh claims, along with all individual defendants [D.E. 22]. On June 1, 2012, the United States filed a motion to dismiss or for summary judgment [D.E. 25], along with a memorandum and exhibits [D.E. 26] and the declaration of Tracy Christ [D.E. 27]. Baker

responded in opposition to the motion for summary judgment [D.E. 30], filed a motion for reconsideration [D.E. 31], and filed a motion to amend his complaint [D.E. 32]. Defendant filed a reply in support of its motion for summary judgment [D.E. 34], responded in opposition to the motion for reconsideration [D.E. 35], and moved to stay the motion to amend [D.E. 36]. Baker then filed a notice of constitutional question pursuant to Federal Rule of Civil Procedure 5.1 [D.E. 37], filed proof of service on the North Carolina Attorney General on August 22, 2012 [D.E. 38], and responded in opposition to the motion to stay [D.E. 39]. On September 10, 2012, defendant filed a reply [D.E. 40]. As explained below, the court grants in part defendant's motion to dismiss, denies plaintiff's motion for reconsideration, grants in part plaintiff's motion to amend, and denies as moot defendant's motion to stay.

I.

On May 7, 2012, the court described in detail the facts of this case. Order [D.E. 22] 2–5. Briefly, on January 13, 2009, a urologist ("Dr. Ogle") "performed on Baker a urethral stricture procedure and a biopsy of related fibrotic stricture[]" and inserted a catheter. Compl. ¶ 25. On January 18, 2009, when the catheter was removed, "an ulceration was discovered on the head of his penis." Id. ¶ 26. The condition worsened and grew extremely painful, but Baker was frequently denied examinations and prescribed medications. Id. ¶¶ 29–30, 34, 36, 44–45, 48. On July 17, 2009, Dr. Ogle performed a biopsy of the lesion, and determined that Baker suffered from squamous cell carcinoma. Id. ¶ 50. In late July, 2009, Baker "was referred to Duke University Medical Center ("DUMC") for [a] dermatological oncology consultation." Id. ¶ 51. According to Baker, as a result of the delay in obtaining a biopsy and diagnosis, Baker was ineligible "for a procedure meant to save portions of his penis," and "no alternative remained but a full penectomy in hopes of preventing the cancer's spread." Id. ¶¶ 52–53. "Baker subsequently endured removal of lymph nodes down his

2

legs, in another step to prevent his cancer from spreading" and "had tubes placed in his legs to help drain post-surgical fluids, but the left drain tube failed multiple times under the . . . United States'[s] and its employees' supervision." Id. ¶ 54. On December 16, 2009, during a follow-up appointment at DUMC, Baker's outside surgeon "immediately admitted [Baker] to recover under [the surgeon's] personal supervision" and expressed "'frustration' and 'shock' at the defendants' failed aftercare." Id. ¶ 55. On January 15, 2010, Baker was discharged from DUMC. On March 10, 2010, Baker was released from prison. Id. ¶ 56.

Although BOP employees provide primary medical care to inmates incarcerated at Butner, BOP provides specialty medical care through specialty clinics staffed by independent contractor physician specialists through a contract with a private company, Medical Development International ("MDI"). Jimenez Decl. [D.E. 26-8] ¶¶ 5, 9, 19; see also [D.E. 26-6] (Mot. Summ. J., Ex. 5 (BOP-MDI contract)). Dr. Ogle is not a BOP employee, but a urologist who performs medical services at Butner through the MDI contract. Jimenez Decl. ¶ 10. "BOP medical providers make referrals for inmates to be seen" by MDI physicians such as Dr. Ogle. Id. ¶ 12. Moreover, "BOP does maintain the authority to approve or deny referrals for treatment and specific treatments recommended by MDI contract physicians." Id. ¶ 7; see also Christ Decl. [D.E. 27] ¶ 6 ("[A] consult request for a surgery . . . is reviewed and approved, or denied, by the BOP . . . ."). While an "onsite MDI Scheduler, who is not a BOP employee, schedules all appointment[s] for specialty clinics," a BOP employee is responsible for "coordinat[ing] the processing of all paperwork associated with [an] outside medical trip" in order to ensure the inmate's ability to attend outside medical appointments. Jimenez Decl. ¶¶ 12, 15. Additionally, BOP custody staff must transport inmates to the Federal Medical Center for medical appointments. Id. ¶ 19.

3

II.

First, the court addresses Baker's motion for reconsideration [D.E. 31]. Baker objects to the court's dismissal of his Bivens claims against the supervisory defendants, particularly Warden Stephens. Mot. Reconsider 3–6, 13. Federal Rule of Civil Procedure 54(b), which governs Baker's motion, provides:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Before a final order is entered, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court . . . ." Id.

In dismissing Baker's claims against Stephens, Batts, Campos, and Serrano-Mercado, the court considered Baker's arguments concerning his personal requests for medical care to each defendant, as well as the specific allegations of his complaint against each supervisory defendant. Order 5–9. Baker's motion for reconsideration reprises his argument that the supervisory defendants' responses to his grievances "were so grossly inadequate that they constituted tacit approval of the institutional bureaucracy's deliberate indifference to his life-threatening medical needs." Mot. Reconsider 9. Thus, Baker has not presented any argument warranting reconsideration. See, e.g., Iko v. Shreve, 535 F.3d 225, 242 (4th Cir. 2008); Sawyer v. Stolle, No. 2:11CV446, 2011 WL 6396592, at *12–13 (E.D. Va. Dec. 20, 2011) (unpublished); Davis v. Sec'y

4

of Dep't of Pub. Safety & Corr. Servs., No. JFM-10-2009, 2011 WL 2974906, at *4 (D. Md. July 20, 2011) (unpublished); Green v. Rubenstein, 644 F. Supp. 2d 723, 747–48 (S.D. W. Va. 2009). Therefore, the court denies plaintiff's motion for reconsideration.

Next, the court addresses the United States's motion to dismiss or for summary judgment [D.E. 25]. Defendant asserts the court lacks subject-matter jurisdiction over Baker's FTCA claim. Alternatively, defendant argues that Baker fails to state a claim upon which relief can be granted, or, that defendant is entitled to summary judgment.

Under Rule 12(b)(1), plaintiff bears the burden of establishing federal jurisdiction. See Fed. R. Civ. P. 12(b)(1); Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject-matter jurisdiction may be based, the facts in the complaint are assumed to be true. Kerns, 585 F.3d at 192. Where the Rule 12(b)(1) motion attacks the existence of subject-matter jurisdiction, apart from the complaint, the court may weigh the evidence to determine the existence of jurisdiction. Id.

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's legal conclusions, elements of a cause of action, or bare assertions devoid of further factual enhancement. See, e.g., Iqbal, 556 U.S. at 768; Nemet Chevrolet,

Ltd. v. Consumeraffairs. com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

The United States asserts that the court lacks subject-matter jurisdiction over Baker's FTCA claim because he was injured by the acts of independent contractors. See Mem. Supp. Mot. Dismiss 9–20. Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S.

6

150, 150 (1963) (footnote omitted). The waiver is limited, however, to acts of governmental employees, and does not extend to acts of independent contractors. See Logue v. United States, 412 U.S. 521, 526–30 (1973); Williams v. United States, 50 F.3d 299, 305–06 (4th Cir. 1995); Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982).

The United States argues that because Dr. Ogle was an independent contractor acting through MDI, it cannot be held liable for Baker's medical treatment. See Mem. Supp. Mot. Dismiss 9–20. Baker does not dispute that Dr. Ogle was an independent contractor, but asserts that his claim focuses on "BOP employees' neglect, which delayed and thwarted its contract physician, Dr. Ogle, and the diagnosis he was trying to make[]" and contends that "Butner staff members (United States employees) substituted their own judgments—including, but not limited to, the kind, dosages, and frequency of medications to be provided" over Dr. Ogle's prescribed course of treatment. See Resp. Opp'n Mot. Dismiss 6–7; cf. Compl. ¶¶ 29–30, 42, 44.

Baker has plausibly alleged facts concerning the alleged negligence of BOP employees to withstand the motion to dismiss. See, e.g., Compl. ¶¶ 30, 36–38, 40, 44, 48, 54–55, 65–73; Cesar v. Achim, No. 07C128, 2009 WL 2225414, at *2 (E.D. Wis. July 22, 2009) (unpublished); Gottlieb v. United States, 624 F. Supp. 2d 1011, 1023 (S.D. Ind. 2008). Thus, the motion to dismiss the negligence claim is denied.

In opposition to this conclusion, defendant cites Robb v. United States, 80 F.3d 884 (4th Cir. 1996). In Robb, the district court dismissed plaintiff's FTCA claim "insofar as it alleged negligence on the part of . . . . [two] physicians [who] were independent contractors rather than employees of the United States." 80 F.3d at 886. The case proceeded to trial "with respect to any claims predicated on the acts or omissions of active duty personnel." Id. Plaintiff appealed the question of whether the two physicians were in fact independent contractors, and the United States Court of

7

Appeals for the Fourth Circuit concluded that they were and that the FTCA claims against the independent contractors were barred. Id. at 893–94.[1] In Robb, the Fourth Circuit did not expressly address whether the independent contractor doctrine bars "mixed" cases, in which some of the plaintiff's allegations concern alleged negligent actions of government employees. Other courts have permitted mixed actions to proceed based on the alleged negligent acts of government employees. See, e.g., Bethel v. United States, 456 F. App'x 771, 781–84 (10th Cir. 2012); Davis v. United States, No. 08-184-ART, 2009 WL 1360658, at *6–7 (E.D. Ky. May 13, 2009) (unpublished); Holmes v. United States, No. CIV-06-796R, 2008 WL 111320, at *9 (W.D. Okla. Jan. 8, 2008) (unpublished); cf. Lopez-Heredia v. Univ. of Texas Med. Branch Hosp., 240 F. App'x 646, 647–48 (5th Cir. 2007) (per curiam) (unpublished) (dismissing FTCA claim because state-law doctrine of superseding negligence by independent contractor "destroyed any causal connection between the negligent act or omission of [the federal employee] and the injury complained of, and thereby became the immediate cause of such injury" (quotation and alterations in original omitted)). Here, Baker's negligence claim under the FTCA may proceed based on the alleged negligent acts of the BOP employees. See Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995); Blackwell v. Hatley, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010). Thus, the court denies defendant's motion to dismiss for lack of subject-matter jurisdiction as to plaintiff's FTCA claim concerning the alleged negligent acts of BOP employees.

---

[1] This aspect of Robb comports with cases involving allegations only against independent contractors. See Moreno v. United States, No. 4:CV-07-1225, 2009 WL 2424644, at *6 (M.D. Pa. Aug. 5, 2009) (unpublished); Simpson v. United States, No. 5:03-CV-192-OC-10GRJ, 2005 WL 1924736, at *4–5 (M.D. Fla. Aug. 10, 2005) (unpublished), aff'd sub nom. Simpson v. Holder, 184 F. App'x 904 (11th Cir. 2006); McConnell v. Gomez, No. Civ.A. 04-CV-127HRW, 2005 WL 1398114, at *5–6 (E.D. Ky. June 13, 2005) (unpublished).

8

Next, the court addresses defendant's motion to dismiss Baker's medical malpractice claim for failure to comply with North Carolina Rule of Civil Procedure 9(j). See Mem. Supp. Mot. Dismiss 21–24. The parties agree that North Carolina substantive law controls this claim. Mem. Supp. Mot. Dismiss 21; Resp. Opp'n Mot. Dismiss 10; see Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009); 28 U.S.C. § 1346(b).

Rule 9(j) states,

Any complaint alleging medical malpractice by a health care provider pursuant to G.S. 90-21.11(2)a. in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j).

The North Carolina General Assembly enacted Rule 9(j) "in part, to protect defendants from having to defend frivolous medical malpractice actions by ensuring that before a complaint for medical malpractice is filed, a competent medical professional has reviewed the conduct of the defendants and concluded that the conduct did not meet the applicable standard of care." Estate of Waters v. Jarman, 144 N.C. App. 98, 100, 547 S.E.2d 142, 144 (2001) (quotation omitted); see Thigpen v. Ngo, 355 N.C. 198, 203–04, 558 S.E.2d 162, 166 (2002). Failure to comply with Rule

9

9(j) is a ground for dismissal of a state medical-malpractice claim filed in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676–77 (W.D.N.C. 2004); Moore v. Pitt Cnty. Mem'l Hosp., 139 F. Supp. 2d 712, 713–14 (E.D.N.C. 2001).

In enacting Rule 9(j), the North Carolina legislature did not create an exception for ignorance or good cause. Nor did the North Carolina legislature provide discretion to the court if a litigant offers an excuse for his noncompliance. See N.C. R. Civ. P. 9(j). "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." Barringer v. Forsyth Cnty. Wake Forest Univ. Baptist Med. Ctr., 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009). Moreover, Baker's status as a former prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements. See, e.g., O'Neil v. Anderson, 372 F. App'x 400, 402 & n.1 (4th Cir. 2010) (per curiam) (unpublished); Hill v. United States, No. 5:08-CT-3070-D, 2010 WL 3075495, at *15 (E.D.N.C. Aug. 5, 2010) (unpublished) (collecting cases); Stevenson v. N.C. Dep't of Corr., 714 S.E.2d 435, 436–37 (N.C. Ct. App. 2011), appeal dismissed, 707 S.E.2d 234 (N.C. 2011).

Rule 9(j) provides one narrow exception: a litigant is excused from Rule 9(j)'s pre-filing certification requirement if negligence may be established under the doctrine of res ipsa loquitur. See N.C. R. Civ. P. 9(j)(3); Rowell v. Bowling, 197 N.C. App. 691, 696-97, 678 S.E.2d 748, 751 (2009). This doctrine applies "only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000) (quotation and emphases omitted); see, e.g., Alston v. Granville Health Sys., 207 N.C. App. 264, 699 S.E.2d 478, 2010 WL 3633738, at *4 (2010) (unreported table decision) (patient fell off a gurney in an operating room while unconscious); Tice v. Hall, 310 N.C. 589, 592–93, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's

10

body); Schaffner v. Cumberland Cnty. Hosp. Sys., Inc., 77 N.C. App. 689, 690–94, 336 S.E.2d 116, 117–19 (1985) (patient's hand burned during ear surgery); Hyder v. Weilbaecher, 54 N.C. App. 287, 292, 283 S.E.2d 426, 429 (1981) (stainless steel wire left in patient). Baker has not plausibly alleged circumstances that support the application of res ipsa loquitur. Accordingly, because Baker failed to comply with Rule 9(j) or to plead facts falling within the res ipsa loquitur exception, the court dismisses Baker's medical malpractice claim.

Baker asserts that Rule 9(j) "violate[s] fundamental [constitutional] rights of access to the courts; due process, and equal protection under law." Resp. Opp'n Mot. Dismiss 16. Baker's argument fails. See Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 103 (2002) (per curiam); Smith v. United States, No. 1:10CV112, 2011 WL 4899933, at *16–18 (M.D.N.C. Oct. 14, 2011) (unpublished). Thus, the court grants defendant's motion to dismiss Baker's medical malpractice claim.

As for Baker's motion to amend his complaint, Baker states that he seeks leave to amend to replead claims against defendants Stephens, Batts, and Campos, and to add "newly-pled special damages counts [which] relate back to the unchangeable facts, and re-state claims of wrong against Baker." Mem. Supp. Mot. Amend 5–6. Baker failed to amend his complaint within the twenty-one-day deadline imposed by Rule 15(a)(1) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 15(a)(1). However, Baker can still amend his complaint by leave of the court. See Fed. R. Civ. P. 15(a)(2). Leave to amend "should freely give leave when justice so requires." Id. The court will deny leave "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quotation omitted).

11

Case 5:11-ct-03070-D   Document 41   Filed 01/18/13   Page 11 of 13

Baker's proposed amended complaint contains allegations concerning the constitutionality of Rule 9(j), and asserts that his medical malpractice claim falls within the doctrine of res ipsa loquitur. Prop. Am. Compl. ¶¶ 10–23. It also contains allegations of questionable relevance concerning audit reports of BOP facilities. Id. ¶¶ 35–40. It attempts to state claims against Stephens, Batts, and Campos, based entirely on their purported "actual, personal knowledge of Plaintiff Baker's serious and continuing physical affliction and mental stress, because Baker spoke directly with them and tried to avail himself of the written grievance procedure to these executives." Id. ¶ 145; see also id. ¶¶ 50, 57, 59, 68, 72, 76–79, 88,[2] 95, 98, 105, 114. Finally, it contains more detailed allegations concerning Baker's course of medical treatment. Id. ¶¶ 55, 61–63, 66, 69, 73, 80–84, 92–94, 97–99, 101–103, 106–122.

To the extent Baker seeks to allege that his medical malpractice claim falls under the doctrine of res ipsa loquitur or that Rule 9(j) is unconstitutional, or to replead Bivens claims against defendants Stephens, Batts, or Campos, his proposed amended complaint is futile. To the extent Baker seeks to add more details concerning his course of medical treatment, the court grants the motion to amend. Baker shall file an amended complaint which complies with this order on or

---

[2] In this paragraph, Baker attempts to hold Stephens liable for his medical care in part based on a discussion Baker had with Butner Assistant Health Services Administrator Garrido, in which Garrido told Baker "that he would speak with . . . Defendant Stephens[] about the accuracy of the administrative procedures," but that "[n]o substantive change in Baker's care level followed, despite AHSA Garrido's *purported* conversations." Prop. Am. Compl. ¶ 88 (emphasis added); see also id. ¶ 68 ("Defendant Batts told Baker he would try to correct the situation by calling A. W. Campos" but "it seems that no action was taken"). Moreover, Baker acknowledges that at least one inaccurate grievance response was completed by a physician's assistant. Id. ¶ 71.

Baker's allegations fall far short of the type of personal awareness or involvement necessary to state an Eighth Amendment claim against these defendants. See, e.g., Rizzo v. Goode, 423 U.S. 362, 376–77 (1976); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Moreover, non-medical supervisory personnel, such as prison wardens, are entitled to rely on medical professionals in formulating grievance responses. Greeno v. Daley, 414 F.3d 645, 655–56 (7th Cir. 2005); Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995); Miltier v. Beorn, 896 F.2d 848, 854–55 (4th Cir. 1990).

12

before February 11, 2013. The United States shall file any response in accordance with the Federal Rules of Civil Procedure. In light of the court's ruling on Baker's motion to amend, the court denies as moot defendant's motion to stay [D.E. 36].

III.

In sum, for the reasons stated, the court GRANTS IN PART defendant's motion to dismiss [D.E. 25], and DISMISSES plaintiff's medical malpractice claim. The court DENIES plaintiff's motion for reconsideration [D.E. 31]. The court GRANTS IN PART plaintiff's motion to amend, and DIRECTS plaintiff to file an amended complaint which complies with this order on or before February 11, 2013. The court DENIES AS MOOT defendant's motion to stay [D.E. 36].

SO ORDERED. This 18 day of January 2013.

JAMES C. DEVER III
Chief United States District Judge